IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Thomas Dorsey, #284813 )<br>)<br>       Petitioner, )<br>)<br>v. )<br>)<br>Stan Burtt, Warden )<br>of Lieber Correctional )<br>Institution, )<br>)<br>       Respondent. )<br>) | Civil Action No.8:07-1865-HFF-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

  The petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the respondent's motion for summary judgment. (Docket Entry # 15.)

  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

  The petitioner brought this habeas action on July 3, 2007.[1] On October 26, 2007, the respondent moved for summary judgment. By order filed October 29, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On December 3, 2007, the petitioner filed a response.

## PROCEDURAL FACTS

  The petitioner is a state prisoner currently incarcerated in the Lieber Correctional Institution. In December 2001, the petitioner was indicted for murder. (App. 182-183.)

---

[1] The prison mailroom stamped the petition as having been received on July 3, 2007, (Pet. Attach. 4), which the undersigned is using as the filing date. *Houston v. Lack*, 487 U.S. 266 (1988)(holding document considered filed upon delivery to prison officials for forwarding to court).

Attorney Michael A. Brown represented the petitioner. On May 30, 2002, the petitioner pled guilty to murder before the Honorable R. Markley Dennis. (App. 122-48.) On June 10, 2002, Judge Dennis sentenced the petitioner to life imprisonment. (App. 151-81; 185.) The petitioner did not appeal his conviction or sentence.

On January 10, 2003, the petitioner filed an application for post-conviction relief ("PCR") raising the following grounds for relief:

> 1) The Applicant contends that the court lacked subject matter jurisdiction to [accept] his guilty plea for murder.
>
> 2) The Applicant contends that the indictment does not allege that the defendant's acts [were] the proximate [cause] of the victim's death and . . . the indictment does not allege the time and place of [the] death of the victim.
>
> 3) The Applicant contends that the indictment does not satisfy the notice requirements of subject matter jurisdiction set forth in the South Carolina Constitution and statutes.
>
> 4) The Applicant[] contends that his guilty plea was not knowingly made.

(App. 1-13.)

On March 7, 2005, the petitioner amended his PCR application to raise two additional grounds for relief:

> 1) Trial counsel was "ineffective and unduly prejudiced Applicant . . . through counsel's failure to properly investigate and research the applicant's Mental Status ans Abilities at any time prior to his plea."
>
> 2) Trial counsel was ineffective because his guilty plea "was not knowing, voluntary, and intelligent through counsel's failure to investigate possible lines of defense that existed and through counsel's failure to properly advise Applicant of the Relevant law as it applied to Applicant's case and those possible defenses to enable Applicant to make a Knowing and intelligent choice among the alternative courses of action open to Applicant prior to his plea."

(App. 14-18.) On October 8, 2005, an held an evidentiary hearing before the Honorable Deadra L. Jefferson. The petitioner was present at the hearing and represented by attorney Jack D. Cordray. On November 25, 2005, Judge Jefferson dismissed the petitioner's PCR

application with prejudice. (App. 110-120.) The petitioner filed a timely notice of appeal.

Assistant Appellate Defender Katherine H. Hudgins represented the petitioner on this appeal. On July 6, 2006, Hudgins filed a petition to be relieved as counsel and a *Johnson* petition for a writ of certiorari raising the following issue: "Did the PCR court err in failing to find that counsel was ineffective in advising petitioner to enter a guilty plea to murder before a court ordered evaluation for competency and criminal responsibility was conducted?" *(Johnson* Pet. 2.)

On August 24, 2006, the petitioner also filed a pro se response in support of his petition for writ of certiorari raising the following issues:

1) That all issues in the Johnson Petition for Writ of Certiorari prepared by Appellate Counsel be incorporated and re-alleged.

2) That this Court allow the issues relating to Defective and Insufficient Indictment.

3) That this Court allow the issues relating to Violations of Petitioners Due Process Rights in the Solicitors failure to comply with "required" South Carolina Rules of Criminal Procedure.

On March 8, 2007, the South Carolina Supreme Court denied the petitioner a writ certiorari and granted counsel's petition to be relieved. The remittitur was sent down on March 26, 2007.

On July 3, 2007, the petitioner filed this habeas action rasing the following grounds, quoted verbatim:

**GROUND ONE**: Ineffective Assistance of Counsel
**SUPPORTING FACTS:** Court Ordered Competency (Psych) Evaluation was not carried out before plea hearing as was ordered. Nor was Petitioner made aware of order before hearing. *Please see attached/inclosed Memorandum

**GROUND TWO:** Plea not knowingly and intelligently entered
**SUPPORTING FACTS:** Plead guilty upon the erroneous advice of counsel. Counsel advised guilty plea would avoid maximum sentence.

**GROUND THREE:** Petitioners Due Process Rights were violated by Solicitors failure to serve notice Required by § 17-25-459 (H)*

> **SUPPORTING FACTS:** During sentencing proceedings solicitor Blair Jennings states wish for petitioner to receive "The Maximum Punishment".
>
> *Please see attached/inclosed Memorandum.

(Pet. 6-9) On October 16, 2007, prior to the respondent filing his return and motion for summary judgment, the petitioner filed an amended petition raising a fourth ground:

> **GROUND FOUR:** Defective and Insufficient Indictment
> **SUPPORTING FACTS:** 1. The indictment fails to provide the time and place of death. 2. There is no indication in the indictment that the victim died as a proximate result of the petitioners acts.

(Am. Pet. at 2.)

## **APPLICABLE LAW**

### **Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**STANDARD OF REVIEW IN § 2254 PETITIONS**

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, " '[a] federal habeas court may grant the writ if the state

court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Humphries v. Ozmint*, 397 F.3d 206, 216 (4th Cir. 2005) (*quoting Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." *McHone v. Polk*, 392 F.3d 691, 719 (4th Cir. 2004).

## EXHAUSTION AND PROCEDURAL BAR

### A. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (I) there is either an absence of available State corrective process; or

> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

2. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial

8

as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an

external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See Karsten v. Kaiser Foundation Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## DISCUSSION

**Ground One**

In Ground One, the petitioner alleges that trial counsel was ineffective because he failed to investigate and research the petitioner's mental status and ensure that the evaluation for competency and criminal responsibility was conducted before he pled guilty. The PCR judge rejected the petitioner's allegation, finding that he had failed to prove either trial counsel's performance was deficient or any prejudice. (App. 112-18.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the

test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. *Id*. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in *Strickland*, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." *Hill v. Lockhart*, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59 (1985) (footnote omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further, there is a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. *Id.* at 689-90.

"An accused who lacks the capacity to distinguish moral or legal right from moral or legal wrong at the time of the crime is relieved of responsibility for his acts. This is the M'Naghten insanity defense, codified as S.C. Code 17-24-10." *Davenport v. State*, 389 S.E.2d 649, 649 (1990)(internal citations omitted). Further, in South Carolina, a defendant may be found guilty but mentally ill ("GBMI") if "at the time of the commission of the act constituting the offense, he had the capacity to distinguish right from wrong or to recognize his act as being wrong . . . but because of mental disease or defect he lacked sufficient capacity to conform his conduct to the requirements of the law." S.C. Code Ann. § 17-24-20.

In *Godinez v. Moran*, 509 U.S. 389 (1993), United States Supreme Court stated the test for competency to enter a guilty plea is "whether the defendant has 'sufficient present

ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Id.* at 396-400. The test for mental competency to plead guilty is no more stringent that the test for competency to stand trial. *Id.* at 399.

The petitioner was originally represented by attorney Mitchell Lanier. The State consented to an evaluation of the petitioner to determine his competency and criminal responsibility. An evaluation order was submitted to the trial judge in February, signed by the trial judge on March 5, 2002, and filed on March 7th. (App. 188-89.)[2] However, the evaluation was never conducted. On March 1, 2002, trial counsel Michael Brown assumed representation of the petitioner when Brown became the Berkeley County Public Defender.[3]

At the PCR hearing, trial counsel testified that he did not have a copy of the order in his file and he did not recall the order. (App. 33; 35.) Trial counsel testified that he did not discuss a competency or criminal responsibility evaluation with the petitioner before the guilty plea because nothing made him question the petitioner's competency to enter a guilty plea or criminal responsibility at the time of the crime. (App. 33-40; 43-44; 46-66; 83-86.)

Trial counsel testified that he had lengthy discussions with the petitioner regarding the nature of the charge, the applicable penalty, the petitioner's constitutional rights, the petitioner's version of the facts, and any possible defenses. (App. 48; 52.) Trial counsel testified that he believed that the petitioner would have been convicted and sentenced to a life sentence if he had proceeded to trial. (App. 39; 51) Trial counsel opined that the

---

[2]The order states the evaluation is necessary because the petitioner "is unable to remember anything about the incident" and "appears unable to assist his counsel in matter pertaining to the defense of his case." (Return Attach. 9 at 1.)

[3]The petitioner sent a letter to the Department of Mental Health ("DMH") asking about the previously ordered evaluation and the DMH responded that it could not find a file on the petitioner. (Return Attach. 11.) However, the DMH also stated that it consists of multiple inpatient facilities and separate requests would need to be sent to these facilities. (*Id.*)

petitioner's best chance of receiving a sentence less than life was to plead guilty. Trial counsel testified that he thought that the petitioner understood the nature of the offense, the possible maximum punishment, his available options, and the risk of entering the guilty plea and receiving a sentence of life rather than thirty years imprisonment. (App. 53.) Trial counsel testified that the petitioner is very bright and had no problems communicating with counsel. (App. 56.)

The petitioner has a high school diploma and two years of mechanic school. (App. 71.) He testified that he understood the murder charge, the possible punishment for murder, the State's evidence, and the right to a jury trial at the time he pled guilty. He also testified that he answered truthfully during the guilty plea colloquy and that parole "never crossed [his] mind" when deciding whether to enter a guilty plea. (App. 71, 78-83.)

The PCR Court found that the petitioner had failed to prove trial counsel's performance was deficient or prejudiced him. (App. 112-18.) The PCR Court found trial counsel's testimony "compelling and credible." (App. 114.) Further, the PCR Court cited the guilty plea transcript. (App. 115.)

The record supports the state PCR judge's findings that trial counsel was objectively reasonable in concluding there was no reason to believe that the petitioner was insane or GBMI under state law. (App. 114-16.) During the guilty plea, the petitioner told the trial court that he had never been treated for a mental illness and he indicated that there was no question about his reasoning ability or cognitive skills. (App. p. 135, lines 1-19.) He also made corrections to the facts of the crime as presented by the State. (App. 140-41.) As the PCR judge noted, the guilty plea transcript is persuasive and leads the undersigned to conclude that the petitioner's allegation is without merit. (App. pp. 117-18.) During the guilty plea, the petitioner indicated his understanding of the nature of the offense, range of penalties and that there was no guarantee as to the sentence. (App. 124-26; 128-29.)

13

Further, the petitioner acknowledged that he instructed his attorney to stop investigating because he wanted to pled guilty. (App. 129-32.) The petitioner acknowledged that there had been no recommendation as to the sentence and that he faced a possible sentence of thirty years or life. (App. 127, 134.) The petitioner also indicated that he understood the trial court's questions, and answered the questions truthfully. (App. 134; 141.) The petitioner also indicated he was satisfied with his trial counsel. (App. 141-42; 145-46.)

Both the guilty plea colloquy and trial counsel's testimony reflect that the petitioner was able to consult with his lawyer with a reasonable degree of rational understanding and he had a rational and factual understanding of the proceedings against him. Further, the petitioner has failed to show prejudice. He has not presented any testimony or other evidence to show that he was not competent when he entered the guilty plea or that he was either insane or GBMI at the time of the offense. Based on the foregoing, the petitioner has failed to establish trial counsel was deficient and resulting prejudice. Accordingly, the PCR Court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this issue is without merit.

**Ground Two**

In Ground Two, the petitioner alleges that his guilty plea was not knowingly and voluntarily entered because he did not understand that he would be parole ineligible. The respondent contends that this issue was procedurally defaulted in state court because the petitioner did not raise this issue in state court and the petitioner cannot show cause for and prejudice from the default. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The undersigned agrees.

The petitioner did not raise this issue in his PCR proceeding. *Pruitt v. State*, 423 S.E.2d 127, n. 2 (S.C. 1992)(holding issue must be raised to and ruled on by the PCR judge

14

in order to be preserved for review). Accordingly, this issue is barred from habeas review. *Coleman v. Thompson*, 501 U.S. 722 (1991). Further, the petitioner has not shown any cause or actual prejudice for the default or demonstrated that failure to consider the claims will result in a fundamental miscarriage of justice. *Id*.

**Ground Three**

In Ground Three, the petitioner alleges that the State violated his due process rights because the Solicitor did not serve notice as "required by" S.C. Code Ann. § 17-25-45(H). The petitioner did not raise this issue in his PCR proceeding.[4] The petitioner did raise this issue in his pro se response to the *Johnson* Petition. (Return Attach 12 at 9.) However, because the petitioner did not raise this issue to the PCR Court and thus the PCR judge did not address this issue in its order of dismissal, the South Carolina Supreme Court would not have been able to review these issues. *McCullough v. State*, 464 S.E.2d 340, 341 (S.C.1995); *Pruitt v. State,* 423 S.E.2d 127, n. 2 (S.C. 1992)(holding issue must be raised to and ruled on by the PCR judge in order to be preserved for review). Accordingly, this issue is barred from habeas review. *Coleman v. Thompson*, 501 U.S. 722 (1991). Further, the petitioner has not shown any cause or actual prejudice for the default or demonstrated that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.*

**Ground Four**

In Ground Four, the petitioner alleges that the indictment was defective and insufficient because it failed to allege the time and place of death and there was no

---

[4]The undersigned notes that because the petitioner pled guilty, the petitioner could not have raised this issue in a direct appeal. Moreover, the issue could not be properly raised in PCR because it is not framed in the context of an ineffective assistance of counsel claim. *Drayton v. Evatt*, 430 S.E.2d 517, 520 (S.C. 1993) (issues that could have been raised at trial or in direct appeal cannot be asserted in PCR application absent a claim of ineffective assistance of counsel); *Hyman v. State*, 299 S.E.2d 330 (S.C. 1983) (same).

15

indication that the victim died as a proximate cause of the petitioner's acts. The petitioner raised this issue in his PCR application. However, the PCR Court found that the issue was not one raising an issue of subject matter jurisdiction relying on *State v. Gentry*, 610 S.E.2d 494 (2005). Additionally, the PCR Court ruled that the indictments were sufficient.

A state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter cognizable in federal habeas corpus. *Wright v. Angelone*, 151 F.3d 151 (4th Cir. 1998); *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976) (a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary"). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding "it is not the province of a federal habeas corpus court to reexamine state court determinations on state-law questions.") Accordingly, this issue is without merit.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (#15) be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

                                  s/Bruce Howe Hendricks
                                  United States Magistrate Judge

April 30, 2008
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).